**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **TERESA JOSEPH**, on behalf of herself and others similarly situated, ) ) | Case No. 1:22−cv−01631−MPB−TAB |
| ) Plaintiff, ) | Judge Matthew P. Brookman |
| ) v. ) | Magistrate Judge Tim A. Baker |
| ) **MAJESTIC CARE STAFF LLC**, *et al.*, ) ) | **JOINT MOTION FOR SETTLEMENT APPROVAL** |
| ) Defendants. ) | |

Now comes Plaintiff Teresa Joseph ("Representative Plaintiff"), on her own behalf and on behalf of the other individuals who filed consents to join this action, and Defendants Majestic Care Staff LLC and Majestic Care Staff Holdings LLC ("Defendants") (Representative Plaintiff and Defendants collectively referred to as the "Parties"), by and through their counsel of record, and hereby submit this Joint Motion for Settlement Approval, along with the following supporting memorandum. Attached to this Motion are the following:

**Exhibit 1** –Settlement Agreement and Release of Claims ("Settlement Agreement"), with the Proposed Notice of Settlement of Collective Action Lawsuit ("Notice of Settlement") attached thereto as Exhibit A;

**Exhibit 2** – Declaration of Matthew J.P. Coffman[1]; and,

**Exhibit 3** – Proposed Order Approving Settlement.

---

[1] Attorney Matthew J.P. Coffman and the other attorneys of record at Coffman Legal, LLC for Representative Plaintiff and others similarly situated are referred to herein as "Class Counsel."

1

Dated: February 15, 2024

**HASSLER KONDRAS MILLER LLP**

*/s/ Robert P. Kondras, Jr.*
Robert P. Kondras, Jr. (18038-84)
100 Cherry St.
Terre Haute, IN 47807
Phone: (812) 232-9691
Facsimile: (812) 234-2881
Email: kondras@hkmlawfirm.com

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (OH Bar No. 0085586)
1550 Old Henderson Rd.
Suite #126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com

*Attorneys for Named Plaintiff and others similarly situated*

Respectfully submitted,

**FROST BROWN TODD LLC**

*/s/ Jeffrey N. Lindemann*
Jeffrey N. Lindemann (admitted *pro hac vice*)
10 West Broad St.; Suite 2300
Columbus, Ohio 43215
Phone: (614) 464-1211
Fax: (614) 464-1737
Email: jlindemann@fbtlaw.com

Jessica T.S. Sexton (admitted *pro hac vice*)
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 54202
Phone:   (513) 651-6800
Fax:       (513) 651-6981
Email:    jsexton@fbtlaw.com

Jennifer A. Rulon, #32131-53
9277 Centre Pointe Drive, Suite 300
West Chester, OH 45069
Phone: (513) 870-8200
Fax: (513) 870-0999
Email: jrulon@fbtlaw.com

*Attorneys for Defendants, Majestic Care Staff LLC, et al.*

2

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR SETTLEMENT APPROVAL**

Now come the Parties to hereby submit the following in support of their Joint Motion for Settlement Approval.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Factual Background**

Defendants are Indiana based limited liability companies that provide community-based nursing throughout the states of Indiana, Michigan, and Ohio, specializing in clinical services such as short-term rehabilitation, long-term care, and memory care. Defendants, and/or organizations related to Defendants, own and operate approximately twenty (20) facilities in the State of Indiana and four (4) locations in the State of Michigan. Defendants, and/or organizations related to Defendants, employ or employed Plaintiffs as hourly, non-exempt healthcare employees, who provide direct care to patients.

    **B.  Procedural History**

Representative Plaintiff, on behalf of herself and other similarly situated employees, filed the Complaint in the Southern District of Indiana on August 17, 2022 (the "Action"), asserting a collective action against Defendants alleging claims under the FLSA and Indiana law. Specifically, Representative Plaintiff alleges that Defendants failed to pay their hourly, non-Ohio healthcare employees all overtime wages earned because Defendants (1) did not properly calculate their healthcare employees' regular rates of pay by failing to include certain non-discretionary bonuses into their regular-rate-of-pay calculations and (2) did not pay them for time spent working during meal breaks of twenty (20) minutes or less and/or for meal breaks when they were either clocked out of work or a meal break deduction was otherwise applied to their compensable hours worked. (Coffman Decl. at ¶ 11). The Complaint sought unpaid overtime, liquidated damages, and reasonable attorneys' fees and costs. (ECF No. 1).

On January 30, 2023, the Court issued an order conditionally certifying this case as a collective action and authorizing the distribution of notice of the Action to potentially eligible individuals ("Potential Opt-Ins"). Thereafter, approximately 529 Potential Opt-Ins returned signed consent forms opting in to join this Action ("Opt-In Plaintiffs") (Representative Plaintiff and Opt-In Plaintiffs collectively referred to as the "FLSA Collective Members"), resulting in a total of 530 FLSA Collective Members. (Coffman Decl. at ¶12).

The Parties were scheduled to attend a Settlement Conference with Honorable Magistrate Judge Tim A. Baker on December 12, 2023. Prior to the Settlement Conference, Defendants provided Plaintiffs' Counsel the time and compensation records for the FLSA Collective Members. Class Counsel, with the assistance of its consultant, prepared a damages analysis using this information. (Coffman Decl. at ¶13). Leading up to the Settlement Conference, the Parties debated and discussed the facts and law applicable to this action.

After arms-length negotiations and exchange of substantive information prior the Settlement Conference, the Parties agreed to a compromise between them in order to avoid the expense, inconvenience, uncertainty and delay of further litigation, as memorialized in the attached Agreement. (Coffman Decl. at ¶14).

The proposed settlement satisfies the criteria for approval of an FLSA settlement agreement because (1) it represents a fair and reasonable compromise of a *bona fide* dispute between the Parties; (2) it was reached through contentious arm's length negotiations undertaken by counsel; and (3) the value of the recovery outweighs the mere possibility of further relief after protracted and expensive litigation.

Accordingly, the Parties request that the Court issue an Order (1) approving the $190,000.00 gross settlement fund set forth in the Agreement; (2) approving a $5,000.00 service

4

payment to the Representative Plaintiff; (3) approving Representative Plaintiff's Counsel's requests for attorneys' fees and costs incurred in the litigation, including settlement administration costs; and (4) entering a final judgment dismissing this action with prejudice.

### C. Overview of Negotiations and Settlement

Before initiation of this Action and continuing through the Parties entering into this agreement, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. As part of that investigation, Class Counsel reviewed the payroll and timekeeping records provided by Defendants and hired an analyst to construct a damages analysis. (Coffman Decl. at ¶13).

Settlement covers all FLSA Collective Members. The Agreement establishes a gross settlement amount of $190,000.00, inclusive (a) settlement payments to FLSA Collective Members, (b) a service award to the Representative Plaintiff; (c) payments for Class Counsel's fees and expenses; and (d) the costs of settlement administration. It does not include employer-side payroll deductions which Defendants will pay outside the Total Settlement Amount. (Coffman Decl. at ¶15).

#### 1. Allocation of Settlement Payments

After deducting Class Counsel's fees and costs, the service payment to Representative Plaintiff, and the settlement administration costs from the total settlement amount, the remainder will be allocated to all FLSA Collective Members. Individual payments were calculated by Plaintiffs' Counsel by allocating the net settlement fund on a *pro rata* basis according to the respective employee's calculated overtime damages during the relevant time period. (Coffman Decl. at ¶17).

The net settlement payments to the FLSA Collective Members, after deducting Representative Plaintiff's service award, attorney fees, litigation costs, and estimated settlement

administration costs, reflect approximately 118% of their combined short break overtime damages, regular rate of pay overtime damages, and missed/interrupted meal break overtime damages assuming 50% of their meal breaks were missed or interrupted during the three-year lookback period. (Coffman Decl. at ¶17).

Following Court approval, the Settlement Administrator will mail each FLSA Collective Member their settlement payment and the Notice of Settlement. Plaintiffs will have 180 days to cash the settlement checks. Any unclaimed checks will remain with Defendants. (Coffman Decl. at ¶18).

### 2.  Release of Claims

Each FLSA Collective Member will be bound by a release of wage and hour claims outlined in the Agreement. Also, Representative Plaintiff provides a general release in exchange for the service payment. (Coffman Decl. at ¶19).

### 3.  Attorneys' fees and costs

Class Counsel seeks Court approval of an award of attorneys' fees $63,333.33, or one-third (1/3) of the gross maximum settlement amount, in addition to litigation costs of $16,490.69. Defendants agree that the requested fees and reimbursement of costs are reasonable and do not object to the same. (Coffman Decl. at ¶21).

### 4.  Distribution of Settlement Payments

Each settlement payment to the FLSA Collective Members will be separated into two equal amounts, with 50% allocated to the claims asserted for unpaid overtime and other wage-related damages (with an IRS Form W-2 issued), and 50% allocated to the claims asserted for liquidated damages (with an IRS Form 1099 issued). (Coffman Decl. at ¶17). Each FLSA Collective Member's share of payroll taxes related to wage payments will be deducted by the Settlement Administrator and submitted to the IRS and relevant state agencies. The settlement payments and

the Notice of Settlement, substantially in the form of attached as Exhibit A of the Settlement Agreement, will be mailed by the Settlement Administrator within thirty (30) days after the Court approves the settlement (Coffman Decl. at ¶18). Collective members will have 180 days to cash the settlement checks. (Coffman Decl. at ¶18). The Settlement Agreement includes procedures for the re-mailing of any undeliverable check following additional efforts to locate the collective member, and for the reissuance of lost or stolen checks. Any unclaimed checks will be remitted to Defendants unless the relevant state law requires escheatment to a state agency.

### 5. Settlement Administration

The Parties request that Analytics Consulting LLC be appointed by the Court as the Settlement Administrator. Such appointment is efficient because Analytics Consulting LLC served as the Court-appointed third-party notice administrator and already has information regarding the consent filing dates, addresses and telephone numbers for almost all FLSA Collective Members. (Coffman Decl. at ¶16). The Parties have agreed to provide certain information to the Settlement Administrator to effectuate the terms of the settlement. The cost of settlement administration is estimated to be $5,000.00, which will be deducted from the settlement fund.

## II. ARGUMENT

### A. The Settlement is fair and reasonable and should be approved.

When employees bring a private action against their employer for alleged back wages under the FLSA, and the parties present the district court with a proposed settlement, the court may enter a stipulated judgment dismissing the case after reviewing the settlement to ensure that it is a fair and reasonable resolution of a bona fide dispute over wages under the FLSA. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).

The Parties request that the Court approve the Settlement Agreement because it is a fair

and reasonable resolution of bona fide disputes over wages under the FLSA. As discussed at length during the settlement negotiations, the Parties disagree over the merits of Representative Plaintiff's claims, as well as whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether the FLSA Collective Members would be entitled to liquidated damages. (Coffman Decl. at ¶¶22-24).

Under the FLSA, "[n]ormally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken by counsel … and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Gallant v. Arrow Consultation Servs.*, Inc., No. 1:19-cv-00925-SEB-MPB, 2020 WL 2113399, at *2 (S.D. Ind. May 4, 2020) (Barker, J.) (quoting *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430-LJM-MJD, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (McKinney, J.)) (citations omitted). "Courts are required to determine the fairness of a collective action settlement by assessing 'whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Gallant*, 2020 WL 2113399, at *2 (quoting *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)); *see also Knox v. Jones Grp.*, 15-cv-1738, SEB-TAB, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (Baker, Mag.) ("A district court should approve an FLSA collective action if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties.") (citations omitted). "It is a well settled principle that the law generally encourages settlements." (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)). The Settlement Agreement meets the standard for approval.

8

This matter is being resolved for only individuals who joined the case as parties pursuant to 29 U.S.C. 216(b), and who are now part of this case and settlement as FLSA Collective Members. Because settlement concerns only party-plaintiffs, and not putative class members who did not join, prevailing law in the Southern District of Indiana holds that "one-step" FLSA approval is appropriate. *Gallant*, 2020 WL 2113399, at *2 (quoting *Knox*, 2017 WL 3834929, at *2). "In other words, the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirements contained in Rule 23 of the Federal Rules of Civil Procedure. This is due to the fundamental differences between 'opt-in' and opt-out' class actions governed by Rule 23." *Gallant*, 2020 WL 2113399, at *2 (quoting *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *2 (N.D. Ind. Jan. 4, 2019)) (internal quotation citations omitted). Under the FLSA, "the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future." *Knox*, 2017 WL 3834929, at *2 (citing *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982)). Accordingly, courts do not apply the same standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015); *Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound."). Here, the FLSA Collective Members were advised of and consented to be bound by the settlement and judgment in the case by signing and returning a consent form.

Accordingly, the Parties request that the Court approve the settlement because it is a fair and reasonable resolution of bona fide disputes over wages under the FLSA.

**B.     The Settlement distribution process is fair and reasonable.**

As set forth in the Settlement Agreement, this settlement represents a significant recovery for each FLSA Collective Member in this case, despite the risk that they could recover nothing if litigation continued. In addition, the net settlement amount is fairly allocated between the FLSA Collective Members, primarily on a *pro rata* basis, using produced data and estimates as set forth in the Settlement Agreement. (Coffman Decl. at ¶17). *See Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis"); *Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service was "equitable and reasonable"). As outlined above, the settlement payments reflect approximately 118% of the FLSA Collective Members combined short break overtime damages, regular rate of pay overtime damages, and missed/interrupted meal break overtime damages assuming 50% of their meal breaks were missed or interrupted. (Coffman Decl. at ¶17).

The FLSA Collective Members will receive their payments within thirty (30) days of the Court's order granting settlement approval. (Coffman Decl. at ¶18). Each FLSA Collective Member will have 180 days to negotiate their settlement checks and procedures are provided for the Settlement Administrator to re-mail undelivered checks. (Coffman Decl. at ¶18).

**C.     The Service Payment to Representative Plaintiff is fair and reasonable.**

The Settlement Agreement provides for a "service payment" of $5,000 for Representative Plaintiff. (Coffman Decl. at ¶20). This service payment is reasonable in light of the significant contributions Representative Plaintiff made to advance prosecution and resolution of this

litigation, the benefit conferred upon FLSA Collective Members, and the direct and indirect risks borne by Representative Plaintiff, and the fact that she has agreed to a general release in exchange for the payment. Defendants do not oppose the requested service payment. (Coffman Decl. at ¶20).

As one court in this District noted, "[s]ervice or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox v. Jones Grp.*, No. 15-cv-1738 SEB-TAB, 2017 U.S. Dist. LEXIS 146049, at *7 (S.D. Ind. Aug. 31, 2017) (citations omitted); *see also Winking*, 2022 WL 16706898 (approving $5,000 service award and surveying relevant authority); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Relevant factors in deciding whether a service payment is warranted include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing litigation." *Cook*, 142 F.3d at 1016.

Here, Representative Plaintiff took substantial actions to protect the interests of the collective, including, but not limited to: participating in Plaintiffs' Counsel's pre-suit investigation; reviewing documents; serving as the Representative Plaintiff; providing a general release of claims to Defendants; and helping to provide information necessary to inform settlement negotiations. (Coffman Decl. at ¶20). As a result of Representative Plaintiff's efforts, a substantial benefit is being conferred upon each FLSA Collective Member under the Settlement Agreement.

In addition, Representative Plaintiff undertook substantial direct and indirect risk by

11

originally bringing the collective action in her name. Representative Plaintiff also assumed the risk that "should the suit fail," she could find herself "liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012). "The incentive award is designed to compensate [a class action plaintiff] for bearing these risks, as well as for any time he spent sitting for depositions and otherwise participating in the litigation as any plaintiff must do." *Id.* at 877.

Further, although Representative Plaintiff was no longer employed by Defendants when she initiated the lawsuit, she merits recognition for risking retaliation from future employers for the benefit of all collective members. *See Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing suits against former employers also carry professional and personal risks); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *see also Gallant*, 2020 WL 2113399, at *4 (recognizing that plaintiffs "under[took] direct and indirect risks, such as possible retaliation").

Finally, the amount of the requested service payment is reasonable. *See, e.g., Gallant*, 2020 WL 2113399, at *4 (finding reasonable awards to several plaintiffs of $5,000 each); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016) (awarding named plaintiffs service payments of $10,000 each for participating in pre-suit investigation, providing documents crucial to the claims, assisting in the preparation and review of the complaint, and helping prepare for mediation) (collecting cases).

### D. Plaintiffs' Counsel's attorneys' fees and costs are fair and reasonable.

Representative Plaintiff submits that the fee request as set forth in the Settlement Agreement is appropriate and should be approved. Class Counsel seek one-third of the fund ($63,333.33) as attorneys' fees, in addition to reasonable out-of-pocket costs incurred in litigating and resolving this matter, to wit, $16,490.69. (Coffman Decl. at ¶21). In addition, the estimated settlement administration costs of $5,000.00 are reasonable. These fees and costs will be paid directly from the maximum gross settlement amount. Defendants agree that the requested fees and reimbursement of costs are reasonable and does not object to the same.

The attorneys' fees requested by Plaintiffs' Counsel are based on the market in the Seventh Circuit and "is in line with terms regularly approved by this and other federal district courts in [this] circuit." *Gallant*, 2020 WL 2113399, at *4 (awarding one-third of settlement fund as attorneys' fees in FLSA collective action settlement); *see, e.g., Chen v. Genesco, Inc.*, No. 1:18-cv-00690, 2020 WL 360517, at *5 (S.D. Ind. Jan. 22, 2020) (Barker, J.) (same); *Campbell*, 2012 WL 1424417, at *2 (same); *Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018) (same); *Burkholder*, 750 F. Supp. 2d at 997 (same). As one court in this District observed, "lawyers practicing employment law in this region routinely contract for fees equaling one-third of the overall recovery amount." *Chen*, 2020 WL 360517, at *5 (collecting cases); *see also Brewer*, 2018 WL 2966956, at *4. In this case, Plaintiffs Counsel's agreement on this fee structure with the Representative Plaintiff "at the outset of this litigation reinforces [] confidence in its fairness." *Gallant*, 2020 WL 2113399, at *4.[2] Further, these multiple data points reinforce that Class Counsel are requesting the proper market rate. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 976 (7th Cir. 2001).

---

[2] Coffman Decl. at ¶ 21.

13

As one court in this District observed, "lawyers practicing employment law in this region routinely contract for fees equaling one-third of the overall recovery amount." *Chen*, 2020 WL 360517, at *5 (collecting cases); *see also Brewer*, 2018 WL 2966956, at *4. In this case, Class Counsel's agreement on this fee structure with the Representative Plaintiff "at the outset of this litigation reinforces [] confidence in its fairness." *Gallant*, 2020 WL 2113399, at *4.

Finally, the "Seventh Circuit routinely acknowledges that counsel accept a risk of nonpayment when they embark on representation of a class of plaintiffs on a contingency fee basis." *Gallant*, 2020 WL 2113399, at *4 (citing *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007), and *Koszyk*, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016)). The Seventh Circuit has recognized that a "significant degree of risk of nonpayment" is an appropriate factor in considering attorneys' fee awards. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005). Here, Class Counsel took on this collective action on a contingent basis. (Coffman Decl. at ¶21).

Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citation and internal quotation marks omitted); *see, e.g., Gallant*, 2020 WL 2113399, at *4; *Chen*, 2020 WL 360517, at *5 (same).

Class Counsel not only invested their time, but also paid significant expenses up front. Further, and the settlement administration costs to Analytics Consulting LLC will be paid from the total settlement amount. Such costs and expenses were reasonably incurred to advance the litigation and achieve a favorable settlement for the FLSA Collective Members. (Coffman Decl. at ¶21).

"As the Seventh Circuit has noted, [Plaintiffs] Counsel 'could have lost everything' they

14

invested." *Koszyk*, 2016 WL 5109196, at *4 (quoting *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992)). Accordingly, the Court should award the full $79,824.02, representing reimbursement for litigation costs ($16,490.69) and attorneys' fees in the amount of $63,333.33, which is one-third (1/3) of the gross settlement amount.

## III.    CONCLUSION

For the reasons stated above, the Parties respectfully request that the Court enter an Order approving the Parties' Settlement Agreement and entering a Final Judgment dismissing this action with prejudice.

Dated: February 15, 2024                                     Respectfully submitted,

**HASSLER KONDRAS MILLER LLP**                **FROST BROWN TODD LLC**

*/s/ Robert P. Kondras, Jr.*                                     */s/ Jeffrey N. Lindemann*
Robert P. Kondras, Jr. (18038-84)                        Jeffrey N. Lindemann (admitted *pro hac vice*)
100 Cherry St.                                                          10 West Broad St.; Suite 2300
Terre Haute, IN 47807                                           Columbus, Ohio 43215
Phone: (812) 232-9691                                         Phone: (614) 464-1211
Facsimile: (812) 234-2881                                    Fax: (614) 464-1737
Email: kondras@hkmlawfirm.com                     Email: jlindemann@fbtlaw.com

**COFFMAN LEGAL, LLC**                                  Jessica T.S. Sexton (admitted *pro hac vice*)
                                                                                  3300 Great American Tower
*/s/ Matthew J.P. Coffman*                                301 East Fourth Street
Matthew J.P. Coffman (OH Bar No. 0085586)   Cincinnati, OH 54202
1550 Old Henderson Rd.                                    Phone:   (513) 651-6800
Suite #126                                                             Fax:        (513) 651-6981
Columbus, Ohio 43220                                        Email:    jsexton@fbtlaw.com
Telephone: (614) 949-1181
Facsimile: (614) 386-9964                                   Jennifer A. Rulon, #32131-53
Email: mcoffman@mcoffmanlegal.com            9277 Centre Pointe Drive, Suite 300
                                                                                  West Chester, OH 45069
*Attorneys for Named Plaintiff and others*          Phone: (513) 870-8200
*similarly situated*                                                Fax: (513) 870-0999
                                                                                  Email: jrulon@fbtlaw.com

                                                                                  *Attorneys for Defendants, Majestic Care Staff*
                                                                                  *LLC, et al.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2024, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>　　　　　　　　　　　　　　　*/s/ Matthew J.P. Coffman*
>　　　　　　　　　　　　　　　　Matthew J.P. Coffman

0147973.0761087  4862-8234-1795v1